**STATE of Minnesota, Petitioner, Appellant,**

v.

**Mark Robert DeZELER, Respondent.**

**No. C3–87–1845.**

Supreme Court of Minnesota.

Aug. 5, 1988.

Hubert H. Humphrey, III, Atty. Gen., James B. Farly, Asst. Atty. Gen., St. Paul, Stephen C. Rathke, Aitkin Co. Atty., Brainerd, for petitioner, appellant.

John E. Mack, for respondent.

AMDAHL, Chief Justice.

We granted the state's petition for review in this case not because we disagree with the ultimate conclusion of the court of appeals—that defendant is entitled to withdraw his guilty plea—but because we believe that the reasoning used by the court of appeals is inconsistent with that which we have used in a number of cases.

Defendant, Mark Robert DeZeler, knowingly bought a stolen motor boat valued at over $10,000 from one Robert Metz for $3,500. On the opening day of the fishing season in 1986, the true owner, Bradley Bergquist of Plymouth, was at Myrmar Lodge on Lake Mille Lacs when, coincidentally, defendant navigated the stolen boat into a dock at the lodge. Bergquist recognized the boat as his and confronted defendant. When Bergquist called the police, defendant fled the scene.

The prosecutor could have charged defendant with either theft in the form of possession of stolen property valued at $2,500 or more, which is a severity level IV offense, or with receiving stolen property valued at $1,000 or more, which is a severity level V offense unless the state can establish to the satisfaction of the sentencing court that the value of the property was $2,500 or more, in which case it is a severity level VI offense. *See State v. Olson*, 379 N.W.2d 524, 526–27 (Minn.1986), and *State v. Carr*, 361 N.W.2d 397, 402 (Minn.1985). The prosecutor charged defendant with receiving stolen property valued at $1,000 or more.

Defendant's attorney and the prosecutor believed that defendant's criminal history score was two, based on two prior felony convictions. In fact it was three, because defendant was still on probation in connection with one of the prior convictions and therefore had to be given a custody status point. There is nothing in the record to suggest that defendant knew that his correct criminal history score was three rather than two. Believing that the correct criminal history score was two, the parties assumed that the presumptive sentence was either 27 months stayed or 30 months

stayed, depending on whether the offense was classified as a severity level V or VI offense. In fact, the correct presumptive sentence was either 30 months executed or 34 months executed, depending on whether the offense was classified as a severity level V or VI offense. Believing as they did, the parties reached an agreement whereby defendant would plead guilty, and in exchange, the prosecutor agreed that the offense would be treated as a severity level V offense and agreed to recommend that the trial court "cap" the probationary jail term at 4 months or 6 months, depending on whether or not defendant cooperated by naming the person who sold him the boat and agreeing to testify against him.

The plea was entered on this understanding. No written petition to plead guilty was filed with the court. While questioning defendant about the prosecutor's agreement to recommend either a 4-month or 6-month sentence, the trial court said, "The bottom line is that you will not be able to withdraw your plea of guilty today regardless of what sentence is imposed, do you understand that?" Defendant replied, "Yes, I do."

Three months later the case came on for sentencing. On that day the parties learned that the defendant's criminal history score was three, not two. The trial court started the hearing by adjudicating defendant guilty of the offense to which he had pleaded guilty. Then the prosecutor urged the court to place defendant on probation, capping the probationary jail time at 4 months because defendant had cooperated by naming Metz. When he was finally allowed to speak, defense counsel said that if the trial court could not accept the prosecutor's recommendation, then defendant wanted to withdraw his guilty plea. Defense counsel said that if the parties had known that defendant's criminal history score was three, not two, they could have worked out a deal whereby defendant would plead guilty to theft of $2,500 or more, a severity level V offense carrying a presumptive sentence of 21 months stayed when committed by a person with a criminal history score of three. Unpersuaded by defense counsel's argument, the trial

court sentenced defendant to the presumptive sentence for a severity level VI offense when committed by a person with a criminal history score of three, 34 months in prison.

This postconviction proceeding followed. The hearing was held before a different judge, who denied postconviction relief.

The court of appeals reversed. The court stated in relevant part:

> Certainly the prosecutor, defense counsel and defendant may *agree* that they will *recommend* a certain disposition of a charge to the trial court. That agreement remains but a recommendation from the point of view of the sentencing court, unless and until the sentencing court agrees to be bound by the recommendation. Unquestionably, the sentencing court has an absolute right to reject the recommendation of the parties. However, rejection must be followed by a statement to defendant that the plea may then either be affirmed or withdrawn.

*State v. DeZeler*, 422 N.W.2d 32, 36 (Minn. App.1988).

Relevant decisions on this aspect of the case include: *State v. Loyd*, 291 Minn. 528, 190 N.W.2d 123 (1971); *State v. Kealy*, 319 N.W.2d 25 (Minn.1982); and *State v. Ford*, 397 N.W.2d 875 (Minn.1986).

In *Loyd* the agreement was one to recommend that the defendant be put on probation. The trial court advised the defendant that the sentence was the prerogative of the court and that it was possible that the court might send defendant to prison rather than put him on probation. At the day of sentencing defense counsel told the court that he was sure he had led the defendant to believe he could withdraw the plea if the trial court did not agree with the prosecutor's recommendation and, on that basis, he asked the court to let the defendant withdraw the plea if the court could not put the defendant on probation. The trial court nonetheless sentenced the defendant to an executed prison term. We allowed the defendant to withdraw the plea because we were "persuaded that defendant was

indeed under the impression suggested by counsel." 291 Minn. at 530, 190 N.W.2d at 124.

Subsequently, in *Kealy*, we held that the defendant was free to withdraw a guilty plea when the trial court rejected the recommendation as to sentence, even though the trial court said at the time of the plea that it retained the freedom to reject the recommendation. We said that "[d]efendant's oral admission at the time he entered his plea that he knew that the trial court could reject the recommendation was not inconsistent with the statement in the petition [to plead guilty] that defendant had a right to withdraw the plea if the trial court rejected the recommendation." 319 N.W.2d at 26.

More recently, in *Ford*, we held that the trial court did not err in refusing to let the defendant withdraw his guilty plea when the trial court, rejecting the prosecutor's bargained-for recommendation that defendant not be incarcerated further, ordered the defendant to serve two consecutive 6–month probationary jail terms. We said that the defendant "did not negotiate with regard to sentence," only as to the recommendation by the prosecutor, and that it was clear to the defendant from statements by the trial court that the trial court might reject the prosecutor's recommendation and that the defendant would have to serve some time in jail. 397 N.W.2d at 882–83.

■ The court of appeals' opinion, which ignored these decisions, confused agreements as to sentence with agreements in which the prosecutor promises to recommend a certain sentence. Under the cases, if the trial court rejects an agreement as to sentence, the defendant is entitled to withdraw his plea.. On the other hand, if the trial court rejects a recommendation made pursuant to an agreement, the defendant is not entitled to withdraw the plea unless he can establish either (a) that, like the defendant in *Loyd* and the defendant in *Kealy*, he mistakenly believed that he could withdraw his plea if the trial court rejected

the prosecutor's recommendation or (b) that there is some other ground for withdrawal.

One can argue that the trial court's statement to defendant that he would not be able to withdraw his plea regardless of what sentence the trial court imposed was a confusing statement. This is because the trial court made the statement after discussing the 6–month and 4–month alternative caps on probationary jail time. Defendant for his part testified at the post-conviction hearing that the statement did not change his understanding that the longest time he would be incarcerated was 6 months. If defendant was confused by the trial court's statement, then allowing him to withdraw his plea might be justified by reference to *Loyd* and *Kealy*.

However, we need not decide this issue because the court of appeals' ultimate decision to let defendant withdraw his plea is independently justifiable on the ground of mutual mistake. Relevant cases include *State v. Trott*, 338 N.W.2d 248 (Minn.1983), and *State v. Benson*, 330 N.W.2d 879 (Minn.1983).

In *Trott* the defendant contended that he should be allowed to withdraw his plea because all the parties, himself included, mistakenly believed that the presumptive sentence was 21 months stayed, not 21 months executed. We upheld the trial court's refusal to let the defendant withdraw his plea. *Trott* is distinguishable from the instant case in that in *Trott* the defendant, who knew by the time of sentencing what the correct presumptive sentence was, did not move to withdraw before the trial court sentenced the defendant.[1] In this case the defendant's attorney said before sentencing that if the trial court was not going to go along with the prosecutor's recommendation, then the defendant wanted to withdraw the plea on the ground of mistake. Further, in *Trott* we noted that it was clear that if the plea there was withdrawn, "most assuredly" the defendant would be convicted of the same

---

1. We said in *Trott*, 338 N.W.2d at 252, "After discussion before the court in which counsel participated, neither the defendant nor his counsel made any motion * * * to withdraw the plea for a mistake."

offense at trial. 338 N.W.2d at 253. This case is different in that defense counsel suggested, and the prosecutor did not contradict this, that if he had known the correct criminal history score, he would have negotiated a different agreement with the prosecutor whereby defendant would have pleaded guilty to theft, a severity level IV offense carrying a presumptive stayed sentence.

In *Benson*, which we find controlling, the parties made a mistake as to the defendant's criminal history score, with the result that defendant agreed to plead guilty believing that the presumptive sentence was a 32–month, not a 41–month, sentence. We held that the trial court erred in departing downward by imposing the 32–month sentence, but we added that "The fact that defendant mistakenly misunderstood that the presumptive sentence was 32 months * * * would be a ground for letting him withdraw the guilty plea and stand trial on the original charges." 330 N.W.2d at 880.

In this case there was a mutual mistake as to what defendant's criminal history score was. The agreement to plead guilty was based entirely on the assumption that the presumptive sentence was a stayed sentence. Because of this mistaken assumption and because of the fact that there were no grounds for an upward departure from the presumptive sentence, the parties mistakenly believed that the only real issue left for the trial court was the length of probationary jail time that defendant had to serve. Once the mutual mistake was discovered, the trial court, in fairness, should have allowed defendant to withdraw his plea.

In summary, we disagree with the reasoning of the court of appeals, but we agree with its ultimate conclusion that defendant is entitled to withdraw his plea.

Affirmed on different ground.