the conditions in paragraphs (1) through (3) are met:
(1) The offender was under one of the following custody statuses:
(i) probation;
(ii) parole;
(iii) supervised release;
(iv) conditional release following release from an executed prison sentence (see conditional release terms listed in section 2.E.3);
(v) release pending sentencing;
(vi) confinement in a jail, workhouse, or prison pending or after sentencing; or
(vii) escape from confinement following an executed sentence.
(2) The offender was under one of the custody statuses in paragraph (1) after entry of a guilty plea, guilty verdict, or conviction. This includes a guilty plea for an offense under Minn. Stat. § 152.18, subdivision 1.
(3) The offender was under one of the custody statuses in paragraph (1) for one of the following:
(i) a felony;
(ii) extended jurisdiction juvenile (EJJ) conviction;
(iii) non-traffic gross misdemeanor;
(iv) gross misdemeanor driving while impaired or refusal to submit to a chemical test; or
(v) targeted misdemeanor.
Minn. Sent. Guidelines 2.B.2.a (Supp. 2013).
Under the 2012 revisions, section 2.B.2.a(4) provides that "a custody point" is to be assigned "if the offender is discharged from probation but commits an offense within the initial period of probation pronounced by the court."
Section 2.B.2.b provides that "two" custody-status points are to be assigned if:
(1) the current conviction offense is an offense on the Sex Offender Grid other than Failure to Register as a Predatory Offender ( Minnesota Statutes, section 243.166 );
(2) the offender was under any of the custody statuses in paragraph a(1) for an offense currently found on the Sex Offender Grid other than Failure to Register as a Predatory Offender ( Minnesota Statutes, section 243.166 ).
Minn. Sent. Guidelines 2.B.2.b (Supp. 2013) (emphasis added).
The district court concluded that the 2012 revisions were unclear concerning whether to assign one or two custody-status points to appellant's criminal history for count two. It therefore applied principles of statutory interpretation to discern the meaning of the guidelines. It concluded that, based on the expressed intent of the Sentencing Guidelines Commission to "make only minor, uncontroversial, stylistic adjustments," the commission did not intend to exempt sex offenders who had been discharged early from probation from being assigned two custody-status points, as had been the case under the pre-2012 guidelines. Accordingly, it assigned appellant two custody-status points when it sentenced appellant on count two.
C. The district court also considered the subsequent 2014 guidelines amendments as indicating the intent underlying the 2012 revisions.
In reaching its conclusion, the district court also relied on the subsequent 2014 amendments to the guidelines, applicable to offenses after August 1, 2014. In 2014, the Sentencing Guidelines Commission amended Minn. Sent. Guidelines 2.B.2.b to *926 provide that whenever a sex offender "qualifies for one custody status point, as described in section a," the offender should be assigned two custody-status points. Minn. Sent. Guidelines 2.B.2.b (2014). In a clear reference to situations such as this one, the Sentencing Guidelines Commission stated that it made this change because the 2012 revisions of Minn. Sent. Guidelines 2.B.2.b were "unclear" as to whether "a second point applies to an offender discharged early from probation under 2.B.2.a(4)." Minn. Sent. Guidelines Comm'n, Adopted Modifications to the Sentencing Guidelines and Commentary Effective for Crimes Committed on or after August 1, 2014 , at 13 (August 2014), https://mn.gov/sentencing-guidelines/assets/August% 202014% 20MN% 20Sentencing% 20Guidelines% 20Adopted% 20Modifications_tcm30-33909.pdf.
D. The 2012 guidelines revisions unambiguously provide for only one custody-status point for count two in appellant's circumstance.
Appellant argues that the district court erred in denying his motion to correct his sentence on count two because the 2012 revisions to Minn. Sent. Guidelines 2.B.2.b are unambiguous. He argues that the district court should not have looked beyond the plain language of the guidelines providing that a sex offender who commits an offense after discharge from probation, but still within the initial announced probation term, should be assigned "a" custody-status point. Minn. Sent. Guidelines 2.B.2.a(4) (Supp. 2013).
While a district court's determination of a defendant's criminal-history score will not be reversed absent an abuse of discretion, State v. Stillday , 646 N.W.2d 557, 561 (Minn. App. 2002), we interpret the sentencing guidelines de novo and "apply the rules of statutory construction to our interpretation of the sentencing guidelines," State v. Campbell , 814 N.W.2d 1, 4 (Minn. 2012). Our role in interpreting the meaning of a statute is to "ascertain and effectuate the intention of the legislature." Id. (quotation omitted). "If the language of a statute is plain and unambiguous, it is presumed to manifest legislative intent and we must give it effect." Id. "Only if a statute is ambiguous will we engage in statutory construction." Id. "A statute is ambiguous if it is susceptible to more than one reasonable interpretation." State v. Henderson , 907 N.W.2d 623, 625 (Minn. 2018). When we interpret a statute, "[we] cannot supply that which the legislature purposely omits or inadvertently overlooks." Wallace v. Comm'r of Taxation , 289 Minn. 220, 184 N.W.2d 588, 594 (1971).
Here, the plain language of Minn. Sent. Guidelines 2.B.2.b (Supp. 2013) requires that, when the current conviction is for a sex offense, "two custody-status points may be assigned" if the offender is under "any of the custody statuses in paragraph a(1)" for another sex offense. Minn. Sent. Guidelines 2.B.2.b. That provision expressly directs us to paragraph a(1). Paragraph a(1) includes "probation" as a custody status, but includes no reference to an offender who has been discharged from probation. Minn. Sent. Guidelines 2.B.2.a(1). Computation of the criminal-history score of an offender no longer on probation is expressly and separately governed by section 2.B.2.a(4), which provides that "a" custody point should be assigned "if the offender is discharged from probation but commits an offense within the initial period of probation pronounced by the court." Minn. Sent. Guidelines 2.B.2.a(4). "A" custody-status point means one point; the unambiguous language of section 2.B.2.a(4) cannot reasonably be read in any other way.
*927 The plain language of the 2012 revisions to the guidelines provides for the assignment of only one custody-status point to appellant under section 2.B.2.a(4), because appellant was not on probation at the time he committed the count-two offense. Appellant did not qualify for a second custody-status point under 2.B.2.b and 2.B.2.a(1). Minn. Sent. Guidelines 2.B.2. He was not on probation in February 2014.
Under the plain language of the 2012 revisions, a new offense committed while the offender was on probation results in one more custody-status point than an offense committed after the offender has been discharged from probation. Minn. Sent. Guidelines 2.B.2.a(4), b (Supp. 2013). The state argues that this cannot have been the intent of the Guidelines Commission in view of the pre-2012 guidelines and the 2014 amendments. But it is not unreasonable that an offender who was not on probation at the time of the offense being sentenced would be assigned one custody-status point, while an offender still on probation for a previous sex offense at the time of the offense being sentenced is assigned two custody-status points. "[A]nomalous results, even if they are the product of inadvertence, do not allow us to ignore the plain language of the statute." State v. Smith , 899 N.W.2d 120, 125 (Minn. 2017). Whether we think offenders like appellant should be assigned one or two custody-status points is not the question.
E. The comments to the various guidelines amendments cannot create ambiguity where none exists in the plain language of the guidelines.
The state seems to agree that the 2012 guidelines revisions are unambiguous, but nevertheless argues that we should look to the Sentencing Guidelines Commission's statement of intent when interpreting the plain language of the guidelines. The modifications adopted in 2012 as a result of the Guidelines Revision Project are described as having been intended to "make [the guidelines] easier to read" and to "[c]larify intended meaning." See Minn. Sent. Guidelines Comm'n (April 2012), supra . And, in its 2014 Adopted Modifications to the Sentencing Guidelines and Commentary report, the commission commented that the 2012 revisions made it "unclear" whether a second point applies to a sex offender discharged early from probation under Minn. Sent. Guidelines 2.B.2.b, and that this was an unintentional "oversight." Minn. Sent. Guidelines Comm'n (August 2014), supra .
The state argues that these statements demonstrate that the commission only intended to make minor or noncontroversial changes to the guidelines in 2012, and a change in the custody-status points assigned to repeat sex offenders could not have been its intent because that change is neither minor nor noncontroversial. It argues that the Minnesota Supreme Court's decision in State v. Boecker , 893 N.W.2d 348 (Minn. 2017), permits us to consider these statements as we interpret the plain language of the guidelines.
Boecker is distinguishable. There, the Minnesota Supreme Court articulated the rule that "session laws are relevant when interpreting the plain language of a statute." Boecker , 893 N.W.2d at 353. The supreme court reasoned that the text of the session laws is the "primary evidence" of the statutes that have been codified, and "the Legislature's statement of intent as expressed in the ... session laws must be considered along with the codified language of the statute when analyzing the entire statute's plain meaning." Id. at 353-54. We read Boecker to have limited application to a specific "statement of intent" portion of a session law. See, e.g. , Act of Apr. 23, 2012, ch. 222, § 4, 2012 Minn. Laws 685, 687 (providing a section titled *928 "legislative intent" clarifying the legislature's goal in amending the statute). Nothing in Boecker indicates that comments by the Sentencing Guidelines Commission may be read to create ambiguity where none otherwise exists.
Established principles of statutory interpretation direct us to look first to the language of the statute, and, if that language is "plain and unambiguous," we must presume that it manifests the intent of the legislature. Campbell , 814 N.W.2d at 3. Minn. Sent. Guidelines 2.B.2 (2013) plainly and unambiguously indicates that an individual who commits a new sex offense after he has been discharged from probation for a previous sex offense, but is still within the original term of probation, is assigned one custody-status point.
F. "Probation" is not ambiguous under the sentencing guidelines.
The state next argues that "probation," as used in Minn. Sent. Guidelines 2.B.2.a(1) (Supp. 2013), should be interpreted broadly in a manner that includes the "initial probation term." The state argues that, when paragraph a(1) is read in the context of the "entire portion of the guidelines," specifically, paragraph a(4) (which provides that offenders who are discharged early from probation should get a custody-status point), the word "probation" in paragraph a(1) includes an offender within the initial term of probation despite early discharge.
Here again, the plain language of the guidelines does not support the state's argument. The guidelines expressly provide for offenders discharged early from probation; paragraph a(4) directs that an offense committed following early discharge from probation should be given "a" custody-status point if the offense being sentenced occurred "within the initial period of probation pronounced by the court." Because the guidelines expressly provide a separate early-discharge status that differs from "probation," we cannot reasonably or logically interpret the latter as including the former.
For these reasons, we reverse the district court's denial of appellant's motion to correct his count-two sentence.
G. The appropriate remedy for the erroneous calculation of appellant's criminal-history score is resentencing on count two.
Appellant's initial brief argued that, because he received the middle-of-the-box sentence under the guidelines on count two using an incorrect criminal-history score, we should order the district court on remand to resentence appellant to the new middle-of-the-box sentence of 306 months. At oral argument, appellant instead asked that the case be remanded for resentencing to the district court, at which time he would argue for resentencing at 306 months. The state agrees that, if an incorrect criminal-history score was used, remand for resentencing is the proper remedy.
"Given the great discretion vested in the district court in sentencing matters, we recognize that not every defendant who receives a" middle-of-the-box sentence using an incorrect criminal-history score will "necessarily receive a similarly situated sentence within the presumptive range when resentenced with a correct criminal history score." State v. Provost , 901 N.W.2d 199, 202 (Minn. App. 2017). Appellant is entitled to resentencing using his correct criminal-history score. But our caselaw does not require that he receive a "similarly situated sentence" within the new presumptive range. Id. And sentencing is properly a function of the better-positioned district court. On remand, the corrected criminal-history score will adjust *929 the presumptive-range anchor guiding the district court's discretion in resentencing on count two. Id. We therefore reverse appellant's sentence on count two and remand for resentencing with a correct criminal-history score of five.
DECISION
The 2012 revisions to the Minnesota Sentencing Guidelines provide that sex offenders who have been discharged from probation and who commit another offense within their original term of probation are to be assigned a single custody-status point. We therefore reverse and remand to the district court for resentencing on count two.
Reversed and remanded.