STATE of Minnesota Respondent,

v.

Ralph Joseph BOECKER, Appellant.

A15-1058

Supreme Court of Minnesota.

Filed: April 26, 2017

Lori Swanson, Attorney General, Saint Paul, Minnesota; and James C. Backstrom, Dakota County Attorney, Tori K. Stewart, Assistant County Attorney, Hastings, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

## OPINION

CHUTICH, Justice.

Appellant Ralph Joseph Boecker pleaded guilty to one count of first-degree driving while impaired (DWI) after the district court found that his 1998 conviction for criminal vehicular operation enhanced his 2015 DWI charge. *See* Minn. Stat. § 169A.24, subd. 1(3) (2016); Minn. Stat. § 609.21, subd. 2a (1996). Boecker argues that he is entitled to withdraw this plea because his 1998 conviction is not included in the list of predicate felonies in section 169A.24, which enhance a DWI charge to first-degree DWI. The sole issue here is whether a criminal vehicular operation conviction from 1998, a year not specifically listed in the current version of the first-degree DWI statute, can be used to enhance a DWI charge to a first-degree offense. We hold that it can, and we affirm the decision of the court of appeals.

## FACTS

The facts here are undisputed. In 1997, Boecker caused a car accident that resulted in another driver suffering serious injuries. When the accident occurred, Boecker had a blood alcohol concentration of 0.13 and no valid driver's license. Following this accident, Boecker pleaded guilty to one count of criminal vehicular operation resulting in substantial bodily harm. *See* Minn. Stat. § 609.21, subd. 2a (1996). His plea was accepted, and he was convicted in 1998.

In January 2015, a police officer stopped Boecker after observing erratic driving. After the officer stopped the car, he noticed that Boecker's eyes were bloodshot and watery, Boecker was slurring his words, and a strong odor of alcoholic beverage emanated from inside the car. The officer brought Boecker to the police department where Boecker agreed to take a breath test. The test showed a blood alcohol concentration of 0.14.

Boecker was charged with two counts of first-degree DWI. He contested the use of his 1998 conviction to enhance his 2015 DWI charge to a first-degree offense, but the district court found sufficient probable cause for enhancement. Following the district court's finding, Boecker pleaded guilty to one count of first-degree DWI and received an executed sentence of 48 months with a 5-year conditional release term.

Boecker appealed, contending that his 1998 conviction did not provide a valid factual basis for his first-degree DWI plea. The court of appeals affirmed the conviction. It first concluded that section 169A.24 is ambiguous as to whether Boecker's 1998 conviction is a predicate felony. *State v. Boecker,* 880 N.W.2d 391, 394, 396 (Minn. App. 2016). The court of appeals then applied the canons of construction for interpreting an ambiguous statute and noted that the Legislature's intent was explicitly stated in the 2012 session law: *"The legislature's intent has always been that criminal vehicular operation convictions under both the pre-2007 and the post-2007 law be used for enhancing driving while impaired penalties. . . ." Id.* at 395 (quoting Act of Apr. 23, 2012, ch. 222, § 4, 2012 Minn. Laws 685, 687); *see* Minn. Stat. § 645.16 (2016).

The court of appeals rejected Boecker's interpretation of the statute after it examined the Legislature's express intent and concluded that "Boecker cannot avoid liability for first-degree DWI simply because the [criminal vehicular operation] statute and the first-degree DWI statute have been renumbered, reorganized, and amended." 880 N.W.2d at 396. Instead, the court of appeals held that Boecker's 1998 criminal vehicular operation conviction is a predicate felony for his first-degree DWI conviction. *Id.; see also* Minn. Stat. § 169A.24, subd. 1(3); Minn. Stat. § 609.21, subd. 2a(2)(i) (1996). We granted Boecker's petition for further review.

## ANALYSIS

The question presented here is whether a conviction for criminal vehicular operation under section 609.21, subdivision 2a, from a year not specifically listed in the first-degree driving while impaired statute, section 169A.24, subdivision 1(3), can be used to enhance a subsequent DWI charge

to a first-degree offense. The answer to this question resolves Boecker's claim that his guilty plea lacked an adequate factual basis.

The validity of a guilty plea is a question of law, which is reviewed de novo. *State v. Raleigh,* 778 N.W.2d 90, 94 (Minn. 2010). A defendant may withdraw a guilty plea if it is "necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is not valid," but a "defendant bears the burden of showing his plea was invalid." *Raleigh,* 778 N.W.2d at 94. "To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent." *Id.* (citing *State v. Trott,* 338 N.W.2d 248, 251 (Minn. 1983)). When a plea is not established with a proper factual basis, it is not accurate and, therefore, is invalid. *Id.* A district court should not accept a guilty plea "unless the record supports the conclusion that the defendant actually committed an offense at least as serious as the crime to which he is pleading guilty." *Trott,* 338 N.W.2d at 251-52 (citing *State v. Goulette,* 258 N.W.2d 758, 762 (Minn. 1977)).

Here, if the first-degree DWI statute does not include Boecker's 1998 criminal vehicular operation conviction as a predicate felony for enhancing his 2015 DWI charge, then the record would not show that Boecker actually committed an offense at least as serious as the crime to which he pleaded guilty. Without a valid predicate felony, the conduct that Boecker admitted to at the guilty plea hearing amounted to misdemeanor fourth-degree DWI. Minn. Stat. § 169A.27 (2016). To determine whether Boecker's plea was supported by an accurate factual basis, we must interpret the first-degree DWI statute, section 169A.24, subdivision 1(3).

"Interpreting a sentencing statute is a question of law, which we review

de novo." *State v. Noggle*, 881 N.W.2d 545, 547 (Minn. 2016) (citing *State v. Leathers*, 799 N.W.2d 606, 608 (Minn. 2011)). The plain language of the statute controls when the meaning of the statute is unambiguous. Minn. Stat. § 645.16. "A statute must be construed as a whole and the words and sentences therein 'are to be understood ... in light of their context.'" *Schmidt ex rel. P.M.S. v. Coons*, 818 N.W.2d 523, 527 (Minn. 2012) (quoting *Christensen v. Hennepin Transp. Co.*, 215 Minn. 394, 10 N.W.2d 406, 415 (1943)). "We interpret a statute 'as a whole so as to harmonize and give effect to all its parts, and where possible, no word, phrase, or sentence will be held superfluous, void, or insignificant.'" *328 Barry Ave., LLC v. Nolan Props. Grp., LLC*, 871 N.W.2d 745, 749 (Minn. 2015) (quoting *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 496 (Minn. 2009)). We may read multiple parts of a statute together to determine whether a statute is ambiguous. *Christianson v. Henke*, 831 N.W.2d 532, 537 (Minn. 2013) (citing *Martin v. Dicklich*, 823 N.W.2d 336, 344 (Minn. 2012)). "A statute is ambiguous only when the statutory language is subject to more than one *reasonable* interpretation." *State v. Jones*, 848 N.W.2d 528, 535 (Minn. 2014) (emphasis added) (quoting *State v. Fleck*, 810 N.W.2d 303, 307 (Minn. 2012)).

Here, Boecker pleaded guilty to first-degree DWI, which is defined as:

> Subdivision 1. **Degree described.** A person who violates section 169A.20 (driving while impaired) is guilty of first-degree driving while impaired if the person: ...
>
> (3) has previously been convicted of a felony under:
>
> (i) Minnesota Statutes 2012, section 609.21 (criminal vehicular homicide and injury, substance-related offenses), subdivision 1, clauses (2) to (6);
>
> (ii) *Minnesota Statutes 2006*, section 609.21 (criminal vehicular homicide and injury, substance-related offenses), subdivision 1, clauses (2) to (6); subdivision 2, clauses (2) to (6); *subdivision 2a, clauses (2) to (6)*; subdivision 3, clauses (2) to (6); or subdivision 4, clauses (2) to (6); or
>
> (iii) section 609.2112, subdivision 1, clauses (2) to (6); 609.2113, subdivision 1, clauses (2) to (6), subdivision 2, clauses (2) to (6) or subdivision 3, clauses (2) to (6); or 609.2114, subdivision 1, clauses (2) to (6), or subdivision 2, clauses (2) to (6).

Minn. Stat. § 169A.24, subd. 1(3) (emphasis added).

Boecker asserts that the first-degree DWI statute is unambiguous. He argues that, because the legislature "expressly limited consideration to those [criminal vehicular operation] convictions occurring 'under' the current, the 2012, and the 2006 Minnesota Statutes," his 1998 criminal vehicular operation conviction cannot be used to enhance his 2015 DWI charge. But, because of an intervening amendment to the criminal vehicular operation statute that took effect on August 1, 2007, Boecker admits that his interpretation limits convictions for criminal vehicular operation that can enhance a DWI charge to first-degree to only those convictions occurring when the 2006 and 2012 statutes were in effect. In other words, criminal vehicular operation convictions occurring between the effective date of the 2007 amendment and through the year 2011 could not enhance DWI charges.

In contrast, the State contends that another reasonable interpretation of the statute is that the years listed in the first-degree DWI statute illustrate when changes to the criminal vehicular operation and first-degree DWI statutes occurred.

The State also correctly asserts that the relevant language of the 2006 criminal vehicular operation statute (specifically mentioned in the 2014 first-degree DWI enhancement statute) and the 1996 criminal vehicular operation statute (under which Boecker was convicted) are identical.[1]

The plain language of the codified 2016 first-degree DWI statute lists three different versions—two by year and one by reference to the statutory sections—of the criminal vehicular operation statute, and each version must be considered in a plain meaning analysis.[2] *See* Minn. Stat. § 169A.24, subd. 1(3)(i)-(iii). Subdivision 1(3)(i) lists the version of the criminal vehicular operation statute in effect in 2012. *Id.*, subd. 1(3)(i). Under this version, the criminal vehicular operation statute was organized into two subdivisions. *See* Minn. Stat. § 609.21, subds. 1, 1a (2012). Subdivision 1 described the crime, and subdivision 1a described the penalty based on the level of harm to the victim. *Id.*

Subdivision 1(3)(ii) lists the version of the criminal vehicular operation statute in effect in 2006. Minn. Stat. § 169A.24, subd. 1(3)(ii). In contrast to the 2012 version of the criminal vehicular operation statute, the 2006 version was organized into separate subdivisions by level of harm to the victim. Minn. Stat. § 609.21, subds. 1-4 (2006). Each subdivision identified a different vehicular crime and penalty to be imposed based on the level of harm caused. *Id.*

Finally, subdivision 1(3)(iii) does not provide a year, but it lists the version of the criminal vehicular operation statute enacted by the Legislature in 2014. Minn. Stat. § 169A.24, subd. 1(3)(iii); *see supra*. Under this version, the statute is once again organized by level of harm to the victim, and each section identifies a different vehicular crime and penalty to be imposed based on the level of harm caused. *See* Minn. Stat. §§ 609.2112, subd. 1(2)-(6); 609.2113 subd. 1(2)-(6), subd. 2(2)-(6), subd. 3(2)-(6); 609.2114, subd. 1(2)-(6), subd. 2(2)-(6) (2016).

In addition to the plain language found in the text of the codified first-degree DWI statute, the 2012 session laws also contain a legislative statement of intent regarding the first-degree DWI statute and the criminal vehicular operation statute. The Revisor of Statutes did not codify this statement of intent, but it provides:

The intent of the legislature in enacting this bill is to *clarify a cross-referencing change* made in 2007 relating to the

---

1. *Compare* Minn. Stat. § 609.21, subd. 2a(2)(i) (2006) ("A person is guilty of criminal vehicular operation resulting in substantial bodily harm . . . if the person causes substantial bodily harm to another, as a result of operating a motor vehicle; . . . (2) in a negligent manner while under the influence of: (i) alcohol. . . ."), *with* Minn. Stat. § 609.21, subd. 2a(2)(i) (1996) ("A person is guilty of criminal vehicular operation resulting in substantial bodily harm . . . if the person causes substantial bodily harm to another, as a result of operating a motor vehicle; . . . (2) in a negligent manner while under the influence of: (i) alcohol. . . .").

2. The Legislature substantially reorganized the criminal vehicular operation statute in 2007 and additional reorganization and renumbering occurred in 2014. *See* Act of May 7, 2007, ch. 54, art. 3, §§ 7-11, 14, 2007 Minn. Laws 206, 248-49, 251 (codified at Minn. Stat. § 609.21 (2010)); Act of Apr. 30, 2014, ch. 180, §§ 4-9, 2014 Minn. Laws 281, 283-88 (codified as amended at Minn. Stat. §§ 609.2111-.2114 (2016)). Similarly, the Legislature also revised the first-degree DWI statute (Minnesota Statutes section 169A.24) to track the amendments to the criminal vehicular operation statute. *See* Act of May 7, 2007, ch. 54, art. 3, § 14, 2007 Minn. Laws 206, 251; Act of Apr. 23, 2012, ch. 222, §§ 3-4, 2012 Minn. Laws 685, 686-87; Act of Apr. 30, 2014, ch. 180, § 3, 2014 Minn. Laws 281, 282-83.

criminal vehicular operation crime. It was not the legislature's intent in 2007 to make a substantive change regarding whether prior criminal vehicular operation convictions would qualify as prior impaired driving convictions or prior impaired driving-related losses of licenses or be considered as a predicate for the first-degree driving while impaired crime. The legislature's intent has *always* been that criminal vehicular operation convictions under *both the pre-2007 law* and the post-2007 law be used for enhancing driving while impaired penalties consistent with the provisions of the driving while impaired laws.

Act of Apr. 23, 2012, ch. 222, § 4, 2012 Minn. Laws 685, 687 (emphasis added).

■ The Legislature has directed that any volume of the Laws of Minnesota, Minnesota Statutes, and the supplement to Minnesota Statutes that are prepared by the Revisor of Statutes are "prima facie evidence of the statutes contained in it in all courts and proceedings." Minn. Stat. § 3C.13 (2016). Thus, the codified Minnesota Statutes are one type of prima facie evidence of the laws of Minnesota, but they are not the laws themselves. *Granville v. Minneapolis Pub. Sch., Special Sch. Dist. 1*, 732 N.W.2d 201, 208 (Minn. 2007). Rather, the " 'actual laws of Minnesota as passed by the legislature . . . are contained in the *session laws*.' " *Id.* (emphasis added) (quoting *Ledden v. State*, 686 N.W.2d 873, 877 (Minn. App. 2004), *rev. denied* (Minn. Dec. 22, 2004)); *see also* Minn. Stat. § 3C.06, subd. 1 (2016) (requiring the Revisor of Statutes "to publish the laws of the session in a publication called 'Laws of Minnesota' " after each legislative session).

■ A reasonable and appropriate extension of the rule set out in *Granville*, already acknowledged by the Minnesota Court of Appeals before our decision in *Granville*,[3] is that session laws are relevant when interpreting the plain language of a statute. *See also Chin v. Merriot*, 470 Mass. 527, 23 N.E.3d 929, 933-34 (2015) (interpreting the plain language of a codified section of Massachusetts's alimony reform act together with language in the act's uncodified sections, which explained the Legislature's intent that certain portions of the act should be applied prospectively).

We have previously looked to the text of the session laws as the primary evidence of the laws of Minnesota. In three postconviction appeals, we rejected an argument that the statute under which the defendant was sentenced was invalid because it lacked either an enacting clause or title as required by the Minnesota Constitution. *Evans v. State*, 788 N.W.2d 38, 46 (Minn. 2010); *Thompson v. State*, 691 N.W.2d 841, 843 n.3 (Minn. 2005); *Koskela v. State*, 690 N.W.2d 133, 134-35, 135 n.3 (Minn. 2004). In each case, we concluded that the defendant's claim was "doomed on its merits" because a review of the session law "makes clear" that the statute was enacted with a proper enacting clause and title. *Koskela*, 690 N.W.2d at 135 n.3; *see Evans*, 788 N.W.2d at 46 (holding that the defendant's argument fails because the session law included an enacting clause); *Thompson*, 691 N.W.2d at 843 n.3 (same).

Under this rule, to give effect to all provisions of the first-degree DWI statute, the Legislature's statement of intent expressed in the 2012 session laws must be considered along with the codified language of the statute when analyzing the

---

**3.** *Xykis v. Arlington Bldg. Corp.*, No. A04-928, 2004 WL 2984372, at *2 (Minn. App. Dec. 28, 2004).

entire statute's plain meaning. One cannot be interpreted without reference to the other.

Specifically, we must interpret the first-degree DWI statute as codified at Minnesota Statutes section 169A.24, subdivision 1(3) in light of what the Legislature expressly stated in the 2012 session laws:

It was not the legislature's intent in 2007 to make a substantive change regarding whether *prior criminal vehicular operation convictions would ... be considered as a predicate* for the first-degree driving while impaired crime. The legislature's intent has always been that criminal vehicular operation convictions under both the pre-2007 [criminal vehicular operation] law and the post-2007 [criminal vehicular operation] law be used for enhancing driving while impaired penalties....

Act of Apr. 23, 2012, ch. 222, § 4, 2012 Minn. Laws 685, 687 (emphasis added).

■■■ After carefully considering the parties' interpretations in light of the plain language of the first-degree DWI statute and the applicable session law, we conclude that the State has the better interpretation: Boecker's 1998 conviction was properly relied on to enhance his 2015 DWI charge to a first-degree offense. Agreeing with Boecker, the dissent asserts that "the crimes listed in clauses (i) and (ii) are time limited, including only those offenses that were committed while the 2006 and 2012 editions of the Minnesota Statutes were in effect." This interpretation creates an obvious temporal gap of at least four years in the application of the first-degree DWI statute to prior criminal vehicular operation convictions because of the legislative amendments to the criminal vehicular operation statute in 2007. *See supra* note 2. For example, under this interpretation the State could use a criminal vehicular operation conviction from July 31, 2007 to enhance a current offense to first-degree DWI, but it could not use a criminal vehicular operation conviction from August 1, 2007 through at least the end of 2011. This interpretation is unreasonable in light of the language of the codified statute and the Legislature's statement of intent in the 2012 session laws.

In contrast, under the State's interpretation, the clauses in subdivision 3 of the first-degree DWI statute refer to the *version* of the statute in effect during the years[4] and statutory sections[5] expressly mentioned. These versions of the statute include: (1) the "expanded" version in which all criminal vehicular operation offenses were organized by level of harm to the victim (the version in effect from 1996-2006 under which Boecker was convicted); (2) the reorganized version in which all criminal vehicular operation offenses were consolidated into a single subdivision (the 2007-2013 version); or (3) the re-expanded and renumbered version in which all criminal vehicular operation crimes are again organized by a level of harm to the victim (the 2014 and later versions). *See* Minn. Stat. § 609.21, subds. 1-4 (2006); Minn. Stat. § 609.21, subd. 1 (2008); Minn. Stat. §§ 609.2111-.2114 (2016). Under the State's interpretation, when a person has a prior criminal vehicular operation conviction under one of the three versions of the statute, and that person is later charged with a DWI offense, that charge can be enhanced to first-degree. This interpretation is the only reasonable interpretation of the first-degree DWI statute when analyzing the plain meaning of the codified statute in conjunction with the 2012 session laws.

4. Minn. Stat. § 169A.24, subd. 1(3)(i)-(ii).

5. Minn. Stat. § 169A.24, subd. 1(3)(iii).

The dissent disagrees and asserts that its statutory interpretation is "perfectly consistent" with the Legislature's statement of intent because the 2006 version of section 609.21 is a "pre-2007" law.[6] While technically accurate, this statement minimizes the clear import of the statement of legislative intent specifically set forth in the session laws. In 2012, the Legislature expressly stated that it did not intend in 2007 to *substantively change* the prior criminal vehicular operation convictions that would be predicate offenses for first-degree DWI crimes. This stated intent is critical because under the 2006 version of the first-degree DWI statute, a prior conviction of criminal vehicular operation under section 609.21 and *all of its subdivisions* was considered a predicate for first-degree DWI crimes.[7] And this 2006 version of the criminal vehicular operation statute, section 609.21, is *identical* in all relevant respects to the criminal vehicular operation laws found in Minnesota Statutes 1996 through 2004.

Finally, the dissent's reference to section 169A.275, subdivision 1(a)—which provides mandatory penalties for *nonfelony* DWI violations—in support of its interpretation is unavailing. In that section, the Legislature expressly provided a 10-year limitation on the use of prior qualified impaired driving incidents to enhance a second offense. Minn. Stat. § 169A.275, subd. 1(a) (2016). Tellingly, the Legislature did not include a similar 10-year limitation in section 169A.24, subdivision 1(3), the provision at issue here, despite including the time limitation *immediately before* in subdivision 1(1). Interpreting section 169A.24, subdivision 1(3), to impose such a time limitation would impermissibly add words to the statute.

Because the State's interpretation is the only reasonable one, the statute is not ambiguous. In addition, because any other interpretation is unreasonable, the 2012 session law and Minnesota Statutes section 169A.24 do not conflict.[8] Instead, the session laws clarify the language of the codified statute. The 2014 amendment to the criminal vehicular operation statute does not change our analysis or lessen the effect of the Legislature's 2012 statement of intent. "[P]ortions of [a] law which were not altered by [an] amendment shall be construed as effective from the time of their

---

**6.** The dissent also asserts that our interpretation conflicts with the canon *"expressio unius est exclusio alterius,"* meaning "the expression of one thing is the exclusion of another." *State v. Caldwell,* 803 N.W.2d 373, 383 (Minn. 2011). Our case law has not been entirely consistent about whether this canon is one of interpretation that may be used, as the dissent does here, to determine if a statute is ambiguous, or whether it is a canon of construction that may be considered only *after* concluding that the statute is ambiguous. *Compare Staab v. Diocese of St. Cloud,* 853 N.W.2d 713, 718 (Minn. 2014) (calling *expressio unius* a "canon of statutory construction" and applying it after concluding the statute was ambiguous), *and State v. Riggs,* 865 N.W.2d 679, 682 n.3 (Minn. 2015) (distinguishing canons of interpretation from canons of construction and concluding that the latter apply only after concluding that a statute is ambiguous), *with*

*Anderson v. Twin City Rapid Transit Co.,* 250 Minn. 167, 84 N.W.2d 593, 599 (1957) (applying *expressio unius* to determine the "clear and unambiguous" meaning of a contract).

**7.** Contrary to the dissent's assertion, our interpretation does not "read out" 2006 and 2012 from the statute; rather, our interpretation gives the reference to these years meaning—a meaning expressly intended by the Legislature. Instead, it is the dissent's interpretation that makes the Legislature's statement of intent superfluous by substantively changing the first-degree DWI statute.

**8.** But, if Minnesota Statutes and the session law were in conflict here, the session law would prevail and the statute would remain unambiguous. *See* Minn. Stat. Vol. I, Preface, xiv (2016).

first enactment...." Minn. Stat. § 645.31, subd. 1 (2016). Here, the 2014 amendment resulted in a renumbering and reorganization of the criminal vehicular operation statute, but the Legislature did not provide a new statement of intent. Because the 2012 statement of intent was not altered by the amendment, we read it as effective from the time of its passage by the Legislature and signing by the Governor.

In sum, the plain language of Minnesota Statutes section 169A.24, subdivision 1(3), encompasses criminal vehicular operation convictions under both the pre-2007 version and the post-2007 version of the criminal vehicular operation statute. The record therefore demonstrates that Boecker committed the crime of first-degree DWI. Accordingly, Boecker's plea was established with an accurate factual basis.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

## DISSENT

STRAS, Justice (dissenting).

Each of the three branches of government has a constitutionally distinct role in the criminal-justice system. The executive branch, as the State's representative, has the authority to decide whether to prosecute a case and which charges, if any, to bring. See United States v. Nixon, 418 U.S. 683, 693, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); Johnson v. State, 641 N.W.2d 912, 917 (Minn. 2002). The substance of the criminal law originates in the legislative branch, which has the exclusive power "to define by statute what acts shall constitute a crime and to establish sanctions for their commission." State v. Forsman, 260 N.W.2d 160, 164 (Minn. 1977). The judicia-

ry's role, by contrast, is limited to interpreting and applying criminal statutes; conducting the trial; and overseeing the final disposition of the case, including imposition of the sentence. See Johnson, 641 N.W.2d at 917. Though it is our job to interpret a criminal statute, particularly when the parties disagree about its meaning, we have cautioned that we must carefully "guard against the creation, by judicial construction, of criminal offences not within the contemplation of the [L]egislature." State v. Mims, 26 Minn. 191, 2 N.W. 492, 492 (1879). I respectfully dissent because the court fails to heed the warning of Mims by using the guise of "judicial construction" to recognize a crime that the Legislature has not.

The question in this case is whether a 1998 criminal-vehicular-operation conviction is a predicate offense that can transform appellant Ralph Boecker's driving-while-impaired ("DWI") charge into a first-degree offense. Resolving this question, like the one presented in Mims, turns on the plain and unambiguous language of a criminal statute—here, Minn. Stat. § 169A.24, subd. 1(3) (2016)—not on what behavior we think the Legislature may have believed it was criminalizing. See Mims, 2 N.W. at 492-93. The court's answer to the question would allow an unlisted offense to enhance Boecker's current crime, converting it from fourth-degree DWI, a misdemeanor with a *maximum* sentence of 90 days in jail, into first-degree DWI, a felony offense carrying a *minimum* sentence of 3 years in prison. Compare Minn. Stat. § 169A.276, subd. 1(a) (2016), *with* Minn. Stat. § 169A.27, subd. 2 (2016); Minn. Stat. § 609.03 (2016). My answer is different. I would conclude that the plain and unambiguous language of section 169A.24, subdivision 1(3), establishes that Boecker's 1998 criminal-vehicular-operation conviction, which is nowhere

to be found in the first-degree DWI statute, does not enhance Boecker's current DWI offense.

The Legislature did not write the first-degree DWI statute in a general and abstract way to bring within its coverage as much varied criminal behavior as possible. Rather, the statute is specific and detailed, containing a lengthy list of first-degree predicate offenses, which are prior convictions that convert what would otherwise be a misdemeanor or gross-misdemeanor DWI charge into a felony, first-degree offense. The statute provides as follows:

Subdivision 1. **Degree described.** A person who violates section 169A.20 (driving while impaired) is guilty of first-degree driving while impaired if the person: ...

(3) has previously been convicted of a felony under:

(i) Minnesota Statutes 2012, section 609.21 (criminal vehicular homicide and injury, substance-related offenses), subdivision 1, clauses (2) to (6);

(ii) Minnesota Statutes 2006, section 609.21 (criminal vehicular homicide and injury, substance-related offenses), subdivision 1, clauses (2) to (6); subdivision 2, clauses (2) to (6); subdivision 2a, clauses (2) to (6); subdivision 3, clauses (2) to (6); or subdivision 4, clauses (2) to (6); or

(iii) section 609.2112, subdivision 1, clauses (2) to (6); 609.2113, subdivision 1, clauses (2) to (6), subdivision 2, clauses (2) to (6), or subdivision 3, clauses (2) to (6); or 609.2114, subdivision 1, clauses (2) to (6), or subdivision 2, clauses (2) to (6). Minn. Stat. § 169A.24, subd. 1.[1]

The statute contains what can only be described as a laundry list of first-degree predicate offenses. Three features of this statute are particularly significant. First, the crimes listed in clauses (i) and (ii) are time limited, including only those offenses that were committed while the 2006 and 2012 editions of the Minnesota Statutes were in effect. Second, clause (iii) contains a list of crimes that are not limited by time, including a host of statutory provisions that serve as first-degree predicate offenses regardless of the years in which they were enacted. Third, and most importantly, the first-degree DWI statute does not contain a residual clause, present in many criminal-enhancement statutes, which makes clear that any crimes that are similar to those specifically listed are also predicate offenses. *See, e.g.*, Minn. Stat. § 609.3455, subd. 1(h) (2016); Minn. Stat. § 617.246, subd. 7 (2016).

Boecker's 1998 conviction of criminal vehicular operation resulting in substantial bodily harm, charged under then-Minn.

1. The court's interpretation of Minn. Stat. § 169A.24, subd. 1, by contrast, amends the statute as follows:

Subdivision 1. **Degree described.** A person who violates section 169A.20 (driving while impaired) is guilty of first-degree driving while impaired if the person: ... (3) has previously been convicted of a felony under: ~~(i) Minnesota Statutes 2012, section 609.21 (criminal vehicular homicide and injury, substance-related offenses), subdivision 1, clauses (2) to (6); (i)~~(ii) Minnesota Statutes ~~2006,~~ section 609.21 (criminal vehicular homicide and injury, substance-related offenses), subdivision 1, clauses (2) to (6); subdivision 2, clauses (2) to (6); subdivision 2a, clauses (2) to (6); subdivision 3, clauses (2) to (6); or subdivision 4, clauses (2) to (6); or (ii)~~(iii)~~ section 609.2112, subdivision 1, clauses (2) to (6); 609.2113, subdivision 1, clauses (2) to (6), subdivision 2, clauses (2) to (6), or subdivision 3, clauses (2) to (6); or 609.2114, subdivision 1, clauses (2) to (6), or subdivision 2, clauses (2) to (6). The court's interpretation effectively reads out the two listed years—2006 and 2012—by giving them no meaning. In dispensing with the years, the court's interpretation also results in clause (i) becoming superfluous. In my view, judicial amendment of any statute, but particularly a criminal statute, is an inappropriate exercise of judicial power.

Stat. § 609.21, subd. 2a (1996), is indisputably not one of the first-degree predicate offenses listed in the first-degree DWI statute. The court is also correct that the statute lists a more recent version of the criminal-vehicular-operation statute—specifically, the 2006 version of Minn. Stat. § 609.21, subd. 2a—that is identical to the 1996 version that the State used to convict Boecker of his 1998 offense. On this much, the court and I agree. Nevertheless, I would conclude that the statute's comprehensive list of first-degree predicate offenses rules out the court's interpretation, which is that, by listing the 2006 version of the statute, the Legislature incorporated the 1996 version too.

The court *may* be right that the Legislature thought it was including the 1996 version of the criminal-vehicular-operation statute as a first-degree predicate offense when it enacted the version of the first-degree DWI statute at issue here, but that is cold comfort to Boecker, who was entitled to rely on its plain language. Moreover, the court's extra-textual interpretation conflicts with the interpretive canon *expressio unius est exclusio alterius*, which means that the expression of one thing is the exclusion of another. *State v. Caldwell*, 803 N.W.2d 373, 383 (Minn. 2011); *see also Harris v. County of Hennepin*, 679 N.W.2d 728, 731-32 (Minn. 2004) (applying the *expressio unius* canon to determine the "clear[ ] and unambiguous[ ]" meaning of a statute). Under the *expressio unius* canon, when the Legislature uses an " 'associated group or series,' " we can presume that the "items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168, 123 S.Ct. 748, 154 L.Ed.2d 653 (2003) (quoting *United States v. Vonn*, 535 U.S. 55, 65, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002)). It is true that the canon applies only when the inference of exclusion is justified, but its use here is particularly appropriate because the statute is uncommonly detailed and specific about the included items. *See, e.g., Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 (11th Cir. 2008); *Nissan Motor Mfg. Corp., U.S.A. v. United States*, 884 F.2d 1375, 1377 (Fed. Cir. 1989); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 108 (2012) ("The more specific the enumeration, the greater the force of the [*expressio unius*] canon. . . ."). And those items include, as relevant here, only a prior felony conviction under the 2012 version of Minnesota Statutes section 609.21, a prior felony conviction under the 2006 version of Minnesota Statutes section 609.21, and a prior felony conviction under the current versions of Minnesota Statutes sections 609.2112-609.2114. They do *not* include a prior felony conviction under the 1996 version of Minnesota Statutes section 609.21.

To be sure, the court would perhaps be right if the first-degree DWI statute included an appropriately worded residual clause, like some enhancement provisions do, or even words of non-exclusivity, like "including" or "such as," which could imply that the listed items are simply examples, depending on the specific words and examples used. *See, e.g.,* Minn. Stat. § 617.247, subd. 9 (2016) ("If the person has previously been convicted of a violation of this section, section 609.342, 609.343, 609.344, 609.345, 609.3451, 609.3453, or 617.246, or any similar statute of the United States, this state, or any state, the commissioner shall place the person on conditional release for ten years."). But this statute contains no such language. The court instead points to a statement of intent, contained in the 2012 session law amending the DWI statutes, which the court applies as if it were a residual clause. This statement says that the bill enacting the first-degree

DWI statute was intended to "clarify a cross-referencing change made in 2007" and indicate that "criminal vehicular operation convictions under both the *pre-2007 law* and the *post-2007 law* be used for enhancing driving while impaired penalties." Act of Apr. 23, 2012, ch. 222, § 4, 2012 Minn. Laws 685, 687 (emphasis added).

The Legislature's statement of intent does not support the court's interpretation for two reasons. First, the first-degree DWI statute lists the 2006 version of Minnesota Statutes section 609.21, the criminal-vehicular-operation statute, which means that my plain-language interpretation is perfectly consistent with the statement of intent. The 2012 statement of intent, as I read it, explains that the law was focused on incorporating statutory changes enacted in 2007. By incorporating those changes through its inclusion of both pre-2007 and post-2007 first-degree predicate crimes, as the statute indisputably does, there is no conflict between the statement of intent and my interpretation of the statute. Here, the first-degree DWI statute expressly includes convictions under the 2006 law; it just does not include earlier ones.[2] Second, at most, the court can claim that the statement of intent renders the first-degree DWI statute ambiguous—a

conclusion with which I disagree—but there is no basis for the court to conclude, as it does, that the statement of intent can overcome the plain and unambiguous language of Minn. Stat. § 169A.24, subd. 1(3), which clearly excludes the 1996 criminal-vehicular-operation statute from its list of first-degree predicate offenses.

In sum, I would reject the court's "judicial construction" of the first-degree DWI statute, which results in *adding* a first-degree predicate offense that the Legislature itself excluded from a specific and detailed list. The court's construction conflicts with our obligation to interpret criminal statutes according to their plain language, the *expressio unius* canon, and even our basic role in the criminal-justice system under the separation of powers. Applying these fundamental principles, I would conclude that Boecker's 1998 conviction is not a first-degree predicate offense.

HUDSON, Justice (dissenting).

I join in the dissent of Justice Stras.

---

**2.** In fact, the first-degree DWI statute's failure to list any offenses prior to the 2006 edition of the Minnesota Statutes makes sense in light of other related provisions in the chapter governing DWI offenses. For example, Minn. Stat. § 169A.275, subd. 1(a) (2016), does not count any convictions greater than 10 years old when determining the appropriate sentence for an individual who commits a misdemeanor DWI offense. The court's approach sets up the anomalous circumstance in which the 1998 conviction enhances Boecker's 2015 DWI charge to a first-degree offense, but is too old to even be counted as a "qualified prior driving incident" for fourth-degree DWI, the charge for which Boecker would otherwise have been guilty.

Contrary to the court's suggestion, my observation that the Legislature generally excludes older convictions does not add words to the statute. Rather, my point is that my interpretation of the *plain language* of Minn. Stat § 169A.24, subd. 1(3), is perfectly consistent with how the Legislature generally treats older DWI convictions in defining various DWI offenses and in fixing the sentences for those offenses. It is, in other words, a structural argument applying the whole-statute canon. *See State v. Riggs*, 865 N.W.2d 679, 683 (Minn. 2015) (describing the whole-statute canon as a textual canon that requires us to interpret "a statute as a whole and interpret its language to give effect to all of its provisions").